(No. 5098.   April 4, 1930.)

A. L. HAMMOND and ANNA S. HAMMOND, His Wife,
Respondents, v. McMURRAY BROTHERS, a Copart-
nership, RAY McMURRAY and HERMAN C. Mc-
MURRAY, Copartners, Doing Business Under the
Firm Name and Style of McMURRAY BROTHERS,
Appellants.

[286 Pac. 603.]

208

T. M. Morris, for Appellants.

S. T. Lowe, for Respondents.

VARIAN, J.—Plaintiffs are the owners in fee of 256.83 acres of unfenced land in sections 30 and 31, and 320 acres, fenced, in section 28 (upon which they reside), and are in possession and entitled to the possession of 320 acres in sections 20 and 21, under filings made pursuant to the Stock Raising Homestead Act (39 Stats. 862, 43 U. S. C. A., sec. 291 et seq.), all in township 11, south of range 21, east of the Boise meridian, in Cassia county, Idaho. There is a large acreage of unoccupied government land in the vicinity of plaintiffs' holdings, as well as land in possession of third persons. Plaintiffs own both sheep and cattle, and graze them upon their said lands.

On January 8, 1926, defendants caused a band of sheep belonging to them to be driven across plaintiffs' fenced land over and upon plaintiffs' unfenced land in said sec-

tion 30, where they had established a camp. They moved their camp twice, but at all times, over the protest of plaintiffs, defendants grazed their sheep upon plaintiffs' lands, trespassing thereon continuously until January 22, 1926, when they left. Plaintiffs commenced this action for damages, and to restrain the further trespass of defendants' sheep, on January 15, 1926. The court issued a temporary restraining order and an order to show cause, etc., returnable January 23, 1926. No appearance was made on that day, and by oral agreement of counsel it was understood that the right to injunction might be tried out at the hearing on the merits. The cause was tried to a jury on the question of damages, and by the court as to the right to injunction. The jury found for plaintiffs, fixing their damages at $250 actual damages, and $250 punitive damages; and the court made findings and issued a perpetual injunction, restraining defendants from trespassing on plaintiffs' lands. From the judgment entered, defendants appeal. They do not attack that part of the judgment for actual damages, but contend plaintiffs are not entitled to exemplary damages or a perpetual injunction.

Appellants' first specification of error, that the evidence is insufficient to justify a verdict for exemplary damages, does not point out the particulars in which the evidence is insufficient, and is therefore not a substantial compliance with rule 40 of this court, requiring a distinct enumeration of the several errors relied on. The third specification of error, that "the court erred in its judgment and decree perpetually enjoining and restraining the defendants from entering upon the real estate described in the amended complaint," is for like reason wholly insufficient. Appellants are not entitled to a review of the questions sought to be raised by these specifications. (*South Side Live Stock Loan Co. v. Iverson*, 45 Ida. 499, 263 Pac. 481; *Walker v. Idaho Lettuce Co.*, 44 Ida. 478, 258 Pac. 931; *Merrill v. Fremont Abstract Co.*, 39 Ida. 238, 227 Pac. 34; *Bell v. Morton*, 38 Ida. 758, 225 Pac. 137; *Hill v. Porter*,

38 Ida. 574, 223 Pac. 538; *Morton Realty Co., Ltd., v. Big Bend Irr. & M. Co.,* 37 Ida. 311, 218 Pac. 433.)

The second specification of error is to the effect that the court erred in giving instructions numbered 10 and 11. Instruction No. 10 defined exemplary damages, and instruction No. 11 told the jury that in assessing plaintiffs' damages, if they found for them, they were not limited to actual damages, but might assess exemplary damages also, if they found that defendants' trespass upon plaintiffs' lands was malicious. The court defined "malicious" as not meaning "spite or ill will, but the intentional doing of a wrongful act without just cause or excuse."

Appellants contend that these instructions were not justified by the evidence and that they misstate the law, in that the jury is told that punitive damages are justified "by way of punishment for the commission of a wrong or tort wilfully"; that is, that trespass is a tort or wrong, and if wilfully committed, punitive damages are justified. It is also contended that the court's definition of "malicious" permits the recovery of punitive damages on the mere doing of an unlawful act without just cause or excuse.

█ In view of the facts disclosed by the evidence in this case, the error is not deemed sufficiently prejudicial to warrant a reversal. While instructions substantially in the language of those given by the court have been sustained in other jurisdictions (Branson's Instructions to Juries, 2d ed., sec. 687, pp. 602, 603; 3 Randall's Instructions to Juries, p. 2441, secs. 2078(2), 2078(3); 2 Blashfield's Instructions to Juries, 2d ed., pp. 2069, 2070, secs. 2627, 2628; 3 Blashfield's Instructions to Juries, 2d ed., p. 4017, sec. 6473; see, also, 17 C. J., pp. 983–985; 8 R. C. L., p. 588, sec. 132; 18 R. C. L., p. 3; *Wendelken v. Stone,* 88 N. J. L. 267, 86 Atl. 376), we think they should have more fully stated the law of exemplary damages as laid down by this court. (See *Unfried v. Libert,* 20 Ida. 708, 119 Pac. 885; *Gunnell v. Largilliere Co., Bankers,* 46 Ida. 551, 269 Pac. 412; *Hewett v. Samuels,* 46 Ida. 792, 272 Pac. 703.) However, the evidence shows the acts complained of to have

been not only malicious, but accompanied by circumstances of aggravation (17 C. J., pp. 980, 981) that amounted to wanton disregard of plaintiffs' rights, fully warranting the jury in assessing punitive damages. (See *Hefley v. Baker*, 19 Kan. 9; *Henderson v. Coleman*, 19 Wyo. 183, 115 Pac. 439, 1136; *Carlson Sheep Co. v. Schmidt*, 21 Wyo. 498, 133 Pac. 1053; *Hall Oil Co. v. Barquin*, 33 Wyo. 92, 237 Pac. 255; *Cumberland Tel. & Tel. Co. v. Shaw*, 102 Tenn. 313, 52 S. W. 163.)

Appellants' 2,000 head of sheep were driven on plaintiffs' lands January 8, 1926, and were continuously herded and grazed thereon in charge of their herder until January 22, 1926. Before the sheep were upon plaintiffs' premises, Mrs. Hammond saw them and talked with the herder in charge. He said he was taking the sheep to camp, and was told the camp was on plaintiffs' lands and that he could not take them there, and not to drive through the intervening wire fence. The herder stated that he was going, that he did not mind the wire, and would drive the sheep right along. He was again notified that the land belonged to the plaintiffs, who did not want sheep there, and that a certain butte also belonged to plaintiffs, and not to drive sheep on it; and the herder replied he was going to graze it all off. He then drove the sheep across the fenced tract. About 4 o'clock in the afternoon of the same day, the husband, plaintiff Hammond, went to the sheep camp of defendants, where he found Ray McMurray, one of the defendants, the herder Martin, and a camp-tender. McMurray told Hammond that the sheep were the McMurray herd, and was informed that he was upon the Hammond land and requested to move off. McMurray replied that the land belonged to Uncle Sam, and if Hammond had any hooks on it, to "trot home and get the papers." Hammond then left. The next day, January 9th, in company with the prosecuting attorney, sheriff, and county school superintendent, Hammond again went to McMurray's camp, where he found the herder and camp-tender. Hammond told the camp-tender to leave and not to go north on top of the

butte, because the land belonged to him and he did not want them there. The herder replied that the boss had put them there. At the camp, Hammond, in the presence of the herder and camp-tender, presented his deed to the land on which the camp was situate, and pointed out the property lines to the prosecuting attorney. The sheep remained in that vicinity and were pastured on plaintiffs' lands in sections 30 and 31 until January 13th, when they were moved on the butte and grazed on plaintiffs' lands in section 20. The camp was moved to a point near the middle of section 17, and off plaintiffs' lands. On January 14th the sheep were grazed upon plaintiffs' lands on the east side of the butte, and the next day grazed down to a house of plaintiffs' on section 20 and inside a 120-acre fenced tract. On January 15th McMurray was seen by Hammond to take supplies in his car to the camp. The sheep grazed on the south side of the butte on the 16th, there being two men with them. On January 17th, Hammond, his son, Arthur Black and Steve Osborne visited the sheep camp. A little south of the hill, near the top, they encountered defendants' sheep, and drove them down to the camp, where they met the herder and camp-tender. Hammond told the herder he had come to see if they had vacated his property, and for them to stay away with the sheep. The herder replied, "You don't own any property. Some papers were served on us, but we don't care about them." Later, the herder seized a gun, and threatened that if Hammond did not stay off and shut his head he would fix him, whereupon the camp-tender disarmed him, and the Hammond party then withdrew. On January 18th and 19th the sheep were grazed on the south and east slopes of the butte, in section 20, and on the 20th they were grazing near the top of the butte, on the east side, in section 20. On January 21st the camp was moved to a point off plaintiffs' lands near the southeast corner of section 17, close to Hammond's line. On January 22d the sheep grazed down the east side of section 20, and were coming on to a forty-acre tract, owned by Hammond, in section 21.

Hammond, his son, and Black got into an empty wagon and drove on to section 21, where they met the herder on horseback. Hammond told him he did not want him to come clear up to his house with the sheep, and to move off. The herder cursed Hammond and struck him with the reins, and stated that if he found him (Hammond) anywhere off by himself he would kill him. Hammond then drove the sheep off his land on to plowed ground.

Ray McMurray, defendant, testified that he was managing these sheep, and that they were in his charge; that he was trying to get the best of the feed; that he went down to the camp every day.

When the present suit was commenced on January 15, 1926, an order to show cause issued, returnable at Burley on January 23, 1926, ordering defendants to show cause why they should not be enjoined from trespassing, etc., upon the said lands of plaintiffs, and enjoining them from "herding, grazing, pasturing or in any manner trespassing" upon said lands. This order to show cause, containing the injunctive order, was served upon both defendants on January 15, 1926. It will be seen, then, that notwithstanding the order, they continued to trespass upon plaintiffs' lands for seven days thereafter, and until January 22, 1926, in total disregard of the restraining order.

██ Appellants urge that the acts complained of here were the acts of their agents or servants, for which they are not responsible. It must be conceded that there is a conflict of authority as to whether exemplary damages may be allowed for the wrongful act of a servant or agent, one line of cases holding that exemplary damages can be allowed in any event, and the other that "the principal or master is held liable only where he has authorized, participated in, or ratified the act of the agent or servant." (17 C. J., p. 989, sec. 290.) In the instant case, the evidence is sufficient to show that the master here at least participated in and ratified the unlawful trespass of his servants. Aside from the gun-play by the herder, his swearing at and striking Hammond, the evidence shows a deliberate intention on

the part of the defendants to graze off the grass on plaintiffs' lands, and so deprive their livestock of its benefit. It is inferable from the record that the defendants were directing their herder and camp-tender in continuously trespassing with their sheep on plaintiffs' lands. Apparently defendants acted upon the theory that because the lines of plaintiffs' lands were not marked out upon the ground, there was no obligation upon defendants to ascertain where they were. They were claiming a right to graze upon public lands, and it was incumbent upon them to ascertain where the lines of these lands were, and to remain within them. (See *Cosgriff Bros. v. Miller,* 10 Wyo. 190, 98 Am. St. 977, 68 Pac. 206; *Herrin v. Sieben,* 46 Mont. 226, 127 Pac. 323.) There is defendant Ray McMurray's own statement that he was on the ground every day; and, by permitting the keeping of the sheep continuously on plaintiffs' lands, he participated in the act of the herder in grazing them thereon. He at all times knew where his sheep were being herded, and must, under the circumstances, be deemed to have ratified the acts of herding by his servants.

Since the question of the right to a permanent injunction is not properly before us, we express no opinion on that point, other than to state that such injunctions have been granted in cases involving similar facts. (See *Strawberry Valley Cattle Co. v. Chipman,* 13 Utah, 454, 45 Pac. 348; *Martin v. Platte Valley Sheep Co.,* 12 Wyo. 432, 76 Pac. 571, 78 Pac. 1093; *Blevins v. Mullally,* 22 Cal. App. 519, 135 Pac. 307; *Frostenson v. Marshall,* 25 N. M. 215, 180 Pac. 287; *Northern Pac. Ry. Co. v. Cunningham,* 103 Fed. 708.)

Judgment affirmed. Costs to respondents.

Givens, C. J., and Budge, Lee and McNaughton, JJ., concur.