(No. 5867. February 13, 1933.)

Z. E. LUNDY, LEAH A. SMITH, H. M. RUDDOCK, SYLVESTER MENDENHALL, THOMAS W. COLE, LEE R. CLEMMONS, C. T. KIRKPATRICK, ELMER E. RUDDOCK and WM. RIENIMER, Appellants, v. PIONEER IRRIGATION DISTRICT, a Municipal Corporation, Respondent.

[19 Pac. (2d) 624.]

T. A. Walters and Walter Griffiths, for Appellants.

Frank T. Wyman, for Respondent.

BUDGE, C. J.—This action was brought by appellants seeking to restrain the collection of certain assessments levied by respondent district, to enjoin future levies on the same basis, and to recover certain alleged excess payments theretofore made by appellants.

From the record it appears that a tract of land comprising five acres within the boundaries of the city of Caldwell and respondent district was subdivided into nine parcels which, since prior to 1924, had been, and at the time of the commencement of the action were, owned in severalty by appellants. Prior to 1924 assessments for all purposes had been levied by respondent district upon the basis of the original apportionment of benefits as fixed and determined upon the creation of the district. In December, 1923, a contract was entered into between respondent and the city of Caldwell by which the latter undertook the delivery of water within its boundaries through a portion of respondent's irrigation system. In the years 1924 to 1928, inclusive, assessments were levied by respondent district for all purposes upon the individual tracts of appellants upon a lot basis, instead of upon an acreage basis as theretofore. After the 1928 assessments were made appellants filed a written

protest with the board of directors of respondent district sitting as a board of correction, protesting against the method of assessment, demanding that it return to the original method of assessment, and that it repay to appellants the excess they had been compelled to pay by reason of the change in the years 1924 to 1927, inclusive. After considering the protest the board re-adopted the original method of assessment with respect to assessments for all purposes other than maintenance and operation, and modified the 1928 assessment for those purposes accordingly, but refused to change the basis of assessment for maintenance and operation, and also refused to repay the alleged excess payments made in 1924 to 1927, inclusive. Appellants thereupon commenced this action.

In their first cause of action of the amended complaint appellants allege the method and basis of assessment prior to 1924 with respect to their lands, and that in 1924, over their protests and objections, the same was changed as above described; that such changed basis and method of assessment was followed each year by respondent district, over appellants' protests and objections, and resulted in appellants being compelled to pay excessive charges; that respondent will continue such practice unless restrained; and that they have no plain, speedy or adequate remedy at law. In each of the five following causes of action, after adopting the allegations of the first cause of action, appellants set forth the excess amounts they allege they were compelled to pay by reason of the change in the basis of assessments for the years 1924 to 1928, inclusive, respectively, and pray that respondent be enjoined from making such excessive assessments and levies in the future and from collecting the excess amount levied in 1928, and that it be required to repay to appellants the excess sums collected for the years 1924 to 1928, inclusive. It might be noted here that while the sixth cause of action alleges the payment of the assessment levied for 1928 and that the prayer asks that the collection of the excess assessment for 1928 be enjoined and

that they recover the excess paid in 1928, the trial court found that there was no evidence that appellants paid any part of the 1928 assessment, which finding is borne out by the record.

By its amended answer respondent, in effect, denied all of the material allegations of the amended complaint and affirmatively alleged as to each cause of action that the same was barred by the provisions of sec. 2, chap. 107, 1921 Sess. Laws, and by that section as amended by chap. 26, 1931 Sess. Laws.

The cause was tried upon these issues by the court sitting without a jury. Findings of fact and conclusions of law were made and filed and judgment was entered in favor of respondent, from which judgment this appeal is taken.

Appellants specify fourteen assignments of error, the great majority of which fail to meet the requirements of Rule 40 of this court for the reason that they are too general. We have frequently protested against such assignments of error. (See *McMillan v. Sproat,* 51 Ida. 236, 239, 4 Pac. (2d) 819; *Burton v. Bayly,* 50 Ida. 707, 709, 300 Pac. 359; *Hammond v. McMurray Brothers,* 49 Ida. 207, 286 Pac. 603, and cases therein cited.) There is practically no reference to the assignments in appellants' brief but from the body thereof and points and authorities it would seem that the matters hereinafter reviewed are presented for consideration.

At the time of the creation of respondent district the board determined and fixed the benefits which would accrue to each tract or subdivision of land within the district by reason of the construction of its irrigation works and apportioned the cost against each tract or subdivision in proportion to the benefit it would derive therefrom. Such apportionment of benefits was confirmed by the district court and the amount so apportioned and distributed to each of the tracts or subdivisions within the district became and remained thereafter the basis for fixing the annual assessments levied against such tracts or subdivisions for all purposes until 1911 and thereafter for all purposes other than maintenance

and operation. (I. C. A., sec. 42–404; *American Falls Reservoir Dist. v. Thrall,* 39 Ida. 105, 123, 144, 228 Pac. 236; *Brown v. Shupe,* 40 Ida. 252, 263, 233 Pac. 59.) Such decree of confirmation thereupon became *res judicata* as to the assessment of benefits for those purposes. (*Russell v. Irish,* 20 Ida. 194, 201, 118 Pac. 501; *Knowles v. New Sweden Irr. Dist.,* 16 Ida. 217, 101 Pac. 81; *Oregon Short Line R. R. Co. v. Pioneer Irr. Dist.,* 16 Ida. 578, 102 Pac. 904.)

Under the facts of this case the original apportionment of benefits was used as the basis for assessments for all purposes prior to 1924. From 1924 to 1928, inclusive, the board levied assessments for all purposes, as to appellants' lands, upon a lot basis, which appellants contend resulted in an excessive levy during those years. However, the only evidence in the record relating to protest or objection during the years 1924 to 1927, inclusive, is that one of the appellants made a verbal protest each year to the tax collector at the time he paid his taxes, which he stated he had always done, but the record does not disclose the nature of the protest, or that any protest or objection whatever was made to the board of directors of respondent district during those years respecting the basis of assessment or otherwise.

After the 1928 assessment had been made appellants filed the written protest above referred to with the board of directors of respondent district, sitting as a board of correction, which, after considering such protest, immediately changed the basis of assessment for purposes other than maintenance and operation to the former method, namely, that based upon the original apportionment of benefits upon an acreage basis and also immediately corrected the 1928 assessment for those purposes accordingly. Thus, with respect to the 1928 assessment for purposes other than maintenance and operation, appellants obtained the desired relief at the hands of the board of directors of respondent district, sitting as aforesaid, and cannot be heard to complain here.

 Coming now to the assessments for maintenance and operation, it is said in *Brown v. Shupe, supra* (p. 261):

"When the Pioneer Irrigation District was organized in 1901 under the law then in force apportionment of benefits was then made by the directors and became final upon proceedings for confirmation. Rev. Codes, sec. 2399, then provided that:

" 'Whenever thereafter any assessment is made either in lieu of bonds, or any annual assessment for raising the interest on bonds, or any portion of the principal, *or the expenses of maintaining the property of the district,* or any special assessment voted by the electors, *it shall be spread upon the lands in the same proportion as the assessment of benefits,* and the whole amount of the assessment of benefits shall equal the amount of bonds or other obligations authorized at the election last above mentioned.'

"In other words, the law in force at the time of the organization of the district provided expressly that assessments for maintenance should be based upon the original assessment or apportionment of benefits. In 1911 the provision of the statute above quoted was expressly amended by striking out the provision *'or the expenses of maintaining the property of the district.'* (C. S., sec. 4362 (now I. C. A., sec. 42–404).)

"The act of 1911, C. S., sec. 4384 (now I. C. A., sec. 42–701) provided for an independent levy of assessments for maintenance and operation not based upon the original assessment of benefits but based upon the benefits received by the lands from the maintenance and operation of the works of the district during each year. . . . . The act further provides that in all districts in which an assessment is levied for the purpose of maintaining and operating the works of the district, the board of directors shall meet at the office of the district on the third Tuesday of August of each year and proceed to levy an assessment upon all of the lands of the district subject to such assessment for expenses of maintaining and operating the works of the district, and said assessment shall be proportionate to the benefits re-

ceived by such lands growing out of the maintenance and operation of said works. . . . . It is therefore quite clear that all assessments for all purposes were based upon the original assessment of benefits and it is equally clear that under the amendments by the 1911 law as above cited, assessments for operation and maintenance were stricken out of Rev. Codes, sec. 2399, and an entirely different and independent procedure provided for. That the legislature had the power to change the law in this respect, to our minds is unquestioned, and that it clearly intended to do so is also apparent. We are not concerned with the reasons that prompted the change. However, it may be pointed out that some lands within the district would not be benefited by the maintenance and operation of its works and therefore should not be assessed. In order to avoid this injustice the legislature may wisely have provided for assessments of benefits to be imposed only as against such lands within the district as would be benefited by the maintenance and operation of its works.''

Appellants contend that the board was not authorized to change the method of assessment for maintenance and operation from an acreage basis to a lot basis, but as the statute in effect at that time (C. S., sec. 4384) specifically required the assessment to be based on benefits by reason of operation and maintenance, it can make no difference which basis is adopted, whether according to acreage or lots, so long as the assessment is based on actual benefits. Appellants have made no showing that the assessments for maintenance and operation complained of were not based on benefits received by their lands growing out of such maintenance and operation.

Furthermore, with reference to assessments for maintenance and operation for the years 1924 to 1927, inclusive, appellants having failed to avail themselves of the rights granted to them by I. C. A., sec. 42-703, and having in those years failed to appear before the board of correction and present their objections, are deemed to have waived them, and thus having a remedy at law and failing to avail

themselves thereof, they are precluded from obtaining equitable relief. (*Brown v. Shupe, supra.*)

As to the assessment for maintenance and operation for 1928, a written protest was filed with the board of directors of respondent district, sitting as a board of correction, protesting against the method of assessment and demanding that the board return to its former method. The board refused to comply with this request. There is no showing in the record that the 1928 assessment for maintenance and operation, whether levied upon an acreage basis or a lot basis, was not nevertheless based upon benefits growing out of maintenance and operation. Until some showing is made that the board is levying assessments for operation and maintenance upon some basis other than that of benefits received from such maintenance and operation, its action in refusing to change the method of assessment cannot justify equitable interference. The action of the board of correction in reviewing assessments for maintenance and operation is final and conclusive unless there is proof of fraud, or of intentional, systematic discrimination which is the equivalent of fraud, which is not shown here.

We come now to the question of the right of appellants to repayment of alleged excess assessments.

With reference to assessments for maintenance and operation for the years 1924 to 1927, inclusive, in those years none of the appellants appeared before the board of directors of respondent district, sitting as a board of correction, or requested to have their assessments reviewed or corrected, under the procedure provided by I. C. A., sec. 42–703, for review and correction of assessments, and thereby waived any objection they might have. (*Brown v. Shupe, supra.*)

As to the 1928 assessments for all purposes, we have hereinbefore held these assessments valid and not excessive, and if appellants have paid the same, which is not shown by the record, they would not be entitled to any rebate.

With respect to assessments levied in 1924 to 1927, inclusive, for purposes other than maintenance and opera-

tion, there being no statutory method for review and correction of such assessments, payment under a proper protest to the proper board or official is an essential prerequisite to entitle the party protesting to repayment of the excess. (*Asp v. Canyon County*, 43 Ida. 560, 563, 256 Pac. 92; *Howell v. Board of Commrs.*, 6 Ida. 154, 53 Pac. 542.) There is nothing in the record to show that any of the appellants, with the exception, perhaps, of appellant H. M. Ruddock, ever made any protest of any kind, and they are therefore not entitled to any rebate or repayment. (*Howell v. Board of Commrs., supra; Asp v. Canyon County, supra.*)

The only evidence of protest on the part of appellant H. M. Ruddock appears from his testimony, as follows:

"Q. Did you make any objection to the change in the assessment of this property from an acreage basis as had been done prior to 1924, and the change to a lot basis as was done in 1924?

"A. I never knew it was done until I got my tax receipt and the tax was $38.00, and I wanted to know if they wanted to take the place, and they' said they made a mistake of $10.00 but the tax was $28.00, and I told him I did not want to pay it.

"Q. Did you protest to the tax collector in regard to the payment?

"A. I certainly did.

"Q. And have those protests been made every year?

"A. I have made them ever since I have been in Idaho."

Assuming that the "tax collector" referred to is the tax collector of respondent district, and conceding that an oral protest is sufficient inasmuch as we have no statute requiring such protest to be in writing (37 Cyc. 1185), we are of the opinion that such protest was too general, indefinite and not directed to any particular assessment, but related to every assessment levied every year. A similar protest to that considered here was involved in *Rogers v. Greenbush*, 58 Me. 390, 4 Am. Rep. 292, where the court was not apparently referring to any statute, and though it did not pass upon the point of protest, said:

"We do not think it necessary to determine, whether the fact the plaintiff, at the time he paid 'protested against said taxes' is sufficient to answer the requirement of the law, that the taxes were paid under protest. We think that the law requires something more definite and distinct than general fault-finding, grumbling, complaint of injustice or inequality, even if in language it takes the form of protestation. It must be a distinct and definite protest against paying the particular tax, on the ground of its illegality. The form may not be material."

This court in *Shoup v. Willis*, 2 Ida. 120, 6 Pac. 124, 125, said:

"The second question is whether the plaintiff is in a position to recover the tax so levied and paid by him. In *Erskine v. Van Arsdale*, 15 Wall. 77 [21 L. ed. 63], the court say: 'Taxes illegally assessed and paid may always be recovered back if the collector understands from the payor that the taxes are regarded as illegal, and that suit will be instituted to compel the refunding of them.' We think the allegation in the complaint that before paying said taxes the defendant was notified in writing that the taxes were claimed to be illegal and void, and that suit would be commenced against him to recover the same, is sufficient, and that the complaint, as a whole, supports the judgment. (Cooley on Taxation, 568.)"

We do not think that the tax collector could have understood from the statements or protests made by Ruddock that the latter regarded the assessments as illegal and that suit would be instituted to compel the refunding of them, within the rule announced in the case last cited.

It might be further observed that the assessments for maintenance and operation involved in this action were valid, that the assessments for other purposes than maintenance and operation levied in the years 1924 to 1927, inclusive, may have been excessive. Appellant Ruddock, if he protested at all, did so against all assessments, including the valid ones. Such a protest lacks sufficient certainty.

Under the law the tax collector was required to turn over the money so collected to the treasurer of the district and the same would be disbursed upon order of the board of directors. No sufficient protest being made, the officer or the district would be in no position to protect himself or itself against the consequences of an action to recover the money paid.

From what has been said it follows that the judgment should be, and is hereby, affirmed. Costs to respondent.

Givens and Holden, JJ., and Babcock, D. J., concur.

Morgan, J., concurs in the conclusion reached.