(No. 7086. June 24, 1943.)

J. K. VAUGHT, Appellant, v. S. W. STRUBLE, Respondent.

[139 Pac. (2d) 456.]

Rehearing Denied July 27, 1943.

Leo M. Bresnahan and Frank Croner for appellant.

Charles Scoggin and Bissell & Bird for respondent.

DUNLAP, J.—Nels Peterson died intestate at Boise, Ada County, Idaho on May 10, 1940, leaving estate in Camas County, Idaho. Following his death, and on the same day, appellant J. K. Vaught, upon his application was by the Probate Court of Camas County, Idaho, appointed special administrator of the estate and duly qualified as such. Thereafter and on or about June 5, 1940, respondent S. W. Struble, as public administrator of Camas County, filed in said court his application for appointment as general administrator of

said estate. Appellant had also filed with said court an application for his appointment as general administrator. The applications were heard on the 17th day of June, 1940, and upon the hearing, the application of appellant for appointment was denied, and an order was made by the court appointing respondent, public administrator of Camas County, administrator of said estate and he forthwith qualified as such by subscribing the oath of office and furnishing bond as required by court, which bond was filed on June 27, 1940, on which date letters of administration were issued to him.

Appeal from these orders and other orders made by the Probate Court in said proceeding was taken by appellant to the District Court of the Fourth Judicial District in and for Camas County, and the District Court held against appellant and confirmed the appointment of respondent. That judgment was thereafter appealed to this court, and upon hearing was confirmed by decision of this court made December 16, 1941. (*Vaught v. Struble,* 63 Ida. 352, 120 P. (2d) 259.)

On May 21, 1940, appellant, then the duly qualified and acting special administrator of said estate, without first obtaining an order of the Probate Court so authorizing, surrendered to the Camas County Growers Association of Fairfield, Idaho, its warehouse receipt issued to decedent for 3140 bushels of wheat, appellant receiving in consideration therefor at said time compensation in the sum of $1326.79, which was at the rate of 52c per bushel, less deductions for certain charges of the warehouse company. Fifty-two cents per bushel was the market value of the wheat at Fairfield, Idaho, at the date of surrender of receipt.

On January 12, 1942, and after the prior decision of this court, appellant as special administrator rendered his final account and on said date filed a petition for discharge. In this account appellant accounted for the net proceeds of the warehouse receipt.

Written objections to certain of the items contained in said final account were filed with the Probate Court by S. W. Struble, administrator, respondent here, and by the heirs of said deceased. After hearing and consideration of such objections, the Probate Court entered its order March 25, 1942, fixing the fee of the special administrator and fixing the fees of the special administrator's attorneys and holding that the disposal of said wheat by the special admin-

istrator was without authority, the court not being petitioned for permission to make the sale, no necessity appearing for said sale and the same not having been confirmed or approved by the Probate Court and that the title of said wheat remained in the estate. Other objections made against the special administrator's account were overruled.

Appellant appealed from this order to the District Court and on the appeal the court entered its judgment and decree in substance as follows: (1) approving the allowances for fees as made by the Probate Court for the services of appellant as such special administrator and to his attorneys for their services to him in that capacity; (2) that 3140 bushels of wheat which J. K. Vaught as such special administrator attempted to sell May 21, 1940, is the property of the estate of Nels Peterson, deceased, and the pretended sale thereof is without force and effect; (3) that the fees of the special administrator and his attorneys mentioned above, shall not be paid by the administrator until all of the property and effects of the decedent in the possession of, or under the control of, the special administrator and his attorneys shall have been fully delivered to S. W. Struble, administrator.

The appeal to this court is from the judgment of the District Court.

Appellant's brief on appeal does not contain a distinct enumeration of the several errors relied upon as provided by rule 52 of this court. We have remonstrated upon the failure to comply with this elementary rule of practice. (*Lundy v. Pioneer Irrigation District*, 52 Ida. 683, 19 P. (2d) 624; *McMillan v. Sproat*, 51 Ida. 236, 4 P. (2d) 899; *Hammond v. McMurray Bros.*, 49 Ida. 207, 286 P. 603; *Burton v. Bayly*, 50 Ida. 707, 300 P. 359.) However, it appears from appellant's points and authorities that the matters as herein decided are presented for consideration. (*Lundy v. Pioneer Irrigation District*, supra; *Mountain States Implement Co. v. Arave*, 49 Ida. 710, 291 P. 1074.)

Appellant states in his brief that the main question presented here is whether or not he was special administrator of the estate from the time of his appointment on May 10, 1940 (upon which date letters were issued to him as such), until the decision of this court affirming the appointment of respondent as general administrator rendered December 16, 1941.

We are also called upon to decide the question of the reasonableness of the fees allowed to appellant for his services as such special administrator, and the reasonableness of the allowances to his attorneys for their services to him as such. Appellant concedes that the allowances as made were reasonable if as a matter of law his term as such special administrator ended upon the issuance of general letters of administration to respondent on June 27, 1940.

The appeal also raises the question of the authority of the appellant as such special administrator to dispose of the wheat warehouse receipt belonging to the estate.

Sec. 15-352, I.C.A., vests in the Probate Court authority to appoint a special administrator under the conditions therein specified, "to collect and take charge of the estate of the decedent in whatever county or counties the same may be found, and to exercise such other powers as may be necessary for the preservation of the estate."

The powers of such special administrator cease upon the appointment of the general administrator under the provisions of sec. 15-357, I.C.A., reading as follows: "When letters testamentary or of administration on the estate of a decedent have been granted, the powers of the special administrator cease, and he must forthwith deliver to the executor or administrator, all the property and effects of the decedent in his hands; and the executor or administrator may prosecute to final judgment any suit commenced by the special administrator." While the statute does not directly in exact words say the term of the special administrator ceases upon the granting of letters to the general administrator, since it does terminate his powers at that time, and requires the delivery over at that time to his successor of the property of the estate, it would seem that the termination of powers and requirement of transfer of the assets would obviously terminate the term since it would be useless to continue the term of one who has no power to act.

Appellant contends, however, that he having appealed from the order granting the general letters, his authority as such special administrator continued pending the termination of that matter, and cites the following cases: *Gresham v. Pyron,* 17 Ga. 263; *Mayer v. Schneider,* 112 Ill. App. 628, 72 N.E. 436; *American Surety Co. v. Gaskill,* 85 Vt. 358,

82 A. 218; and, *Briarfield Irons Works v. Foster,* 54 Ala. 622. In the latter case it appears that under a provision of the Alabama statutes then in effect, the appeal from the order granting the general letters, stayed the granting of the letters until the appeal was disposed of, thus continuing the special administrator in office. We however, do not have a similar statutory provision. Neither do we think these other decisions are authority for the position taken here by appellant in view of our statutory provisions terminating the power of the special administrator upon the issuance of letters to the general administrator.

This view finds support in the following quotation from 21 Am. Jur., p. 835, sec. 819: "The issuance of regular letters of administration effects the removal of a temporary administrator. It works a revocation of his letters." (See also 1 Bancrofts Probate Practice, p. 627, sec. 329; 1 A.L.R., p. 1639; 8 A.L.R., p. 179, and cases cited under note IV.) Where letters were issued, as in this case, before the appeal is taken, the temporary administrator no longer retains his authority, except to account and pay over and deliver property in his hands. (24 C.J.S., p. 1307, sec. 1038; *Security-First Nat. Bank v. Superior Court,* (Cal.) 280 P. 995.)

We therefore hold that the term of appellant as special administrator was terminated upon the issuance of letters of general administration to respondent on June 27, 1940. He thus served in such capacity for a period of one month and seven days.

In view of appellant's admission that the allowances made by the court for his fees and those of his attorneys were reasonable if, as a matter of law, his term was not extended pending the appeal, it follows that we must, and do, so hold.

This brings us to the remaining question of appellant's authority to dispose of the wheat warehouse receipt, during the time he was special administrator with full powers as such.

Under the provisions of sec. 15-352, I.C.A., it is the duty of the special administrator to collect and take charge of the estate of the decedent and to exercise such other powers as may be necessary for the preservation of the estate. Sec. 15-353, I.C.A., provides: "The appointment may be made at any time and without notice, and must be made by entry upon the minutes of the court, specifying the powers

to be exercised by the administrator; upon such order being entered, and after the person appointed has given bond, the clerk must issue letters of administration to such person in conformity with the order."

It was in conformity with this section that appellant's letters were issued as such special administrator and they recite therein the powers granted him by the Probate Court as follows: "To collect and preserve for the administrator all goods, chattels, debts and effects of the decedent, all incomes, rents, issues and profits, claims and demands of the estate, and particularly to arrange for the funeral expenses and expenses of the last illness of said deceased, and generally to exercise such powers of a general administrator as may be provided by law."

It cannot be concluded that the Probate Court in the grant of powers enumerated in the letters, intended to, or did, grant powers to appellant as such special administrator not authorized by our statutes relating to such matters. The powers of a special administrator are limited to such powers as are granted him by statute (2 Bancrofts Probate Practice, p. 705, sec. 373.) "It is the policy of the law to keep the administration of estates within the hands of regularly appointed administrators, and to rely upon special administrators only in cases of emergency and for a limited time. Statutory provisions speaking of powers, duties and liabilities of executors and administrators, are not applicable, as a general rule, to special administrators." (2 Bancrofts Probate Practice, p. 701, sec. 371.)

A special administrator may sell perishable but not other property, of the estate. (Sec. 15-356, I.C.A.; 2 Bancrofts Probate Practice, p. 703, 704, sec. 372.)

Appellant relies upon that portion of sec. 15-356, I.C.A., providing that, "When a special administrator is appointed pending * * * an appeal from an order appointing * * * administrator, such special administrator shall have the same powers * * * as a general administrator, and the letters of administration issued to him shall recite that such special administrator is appointed with the powers of a general administrator."

In this case it should be noted that appellant was not appointed pending the appeal from the order appointing the general administrator, but rather was appointed prior thereto, and moreover, it has been held that such statutory

provisions do not grant powers of a general administrator to the special administrator. The rule is stated in 2 Bancrofts Probate Practice, p. 705, 706, sec. 373, as follows: "The first impression conveyed by such provisions is that the powers of a special administrator may go to any extent with which the court sees fit to invest him. Such, however, is not the rule. By reason of the nature of the office and the specific enumeration of powers, the distinction between general and special administration must be maintained, and the 'other' powers with which the court may invest a special administrator are only such as are incidental and in the line of the enumerated powers. He may not be given generally the powers of an executor or administrator, such as the power to allow or pay claims. The powers specifically conferred upon a special administrator by the statute are exclusive to such an extent that the court whose officer he is may not require him to go beyond the fair import of the statutory provisions, and any acts done by him beyond the scope of the authority conferred are void."

With reference to the transaction in connection with the wheat belonging to the estate, it appears that appellant, while he was acting as special administrator, surrendered to the warehouse the certificate issued to decedent evidencing the deposit of this wheat, and that appellant received upon the surrender of the certificate, the market value of the wheat at the warehouse at Fairfield, Idaho, where the warehouse was located, at the time of the transaction, less the indebtedness owed the warehouse by deceased in connection with the storage thereof. Of course, a special administrator has no authority to sell any property belonging to the estate other than perishable, and then only upon order of the court (sec. 15-356, I.C.A.). It is true that the certificate might have become more valuable in time had appellant not cashed it when he did, likewise it might have become less valuable, but a special administrator is not permitted to speculate with the property of the estate. It is reasonable to assume that had the certificate not been surrendered, the estate would have been chargeable with additional items of expense in connection with the continued storage of the wheat. Under the law it was appellant's duty to collect the assets of the estate, and to exercise such powers as were necessary for the preservation of the estate (sec. 15-352, I.C.A.). The mode of preserving the property of the estate was left to his discretion. (2 Bancrofts Pro-

bate Practice, p. 703, sec. 372; In re Williams, (Mont.) 173 P. 790, 1 A.L.R., 1639.) As to matters of discretion within the general scope of his powers, the measure of the duty of an executor or administrator is to act with fidelity and with that degree of prudence or diligence which a man of ordinary judgment would be expected to bestow upon his own affairs of like nature (2 Bancrofts Probate Practice, p. 637, sec. 333), and the acts should be judged according to circumstances existing at the time of his action. (In re Stewarts Estate, 145 Ore. 620, 28 P. (2d) 642; *Young v. Phillips*, (Tenn.) 93 S.W. (2d) 634, 104 A.L.R. 975; Re Fulton Trust Co., 237 N.Y. 132, 177 N.E. 397, 77 A.L.R. 499, 26 R.C.L., p. 1306.)

It is not claimed that the estate was defrauded and it does not appear that the estate lost any sum whatever by this act of appellant as special administrator. He accounted for the sum he received. He made no private or personal gain by the transaction. He was vested with discretion within the scope of his powers and it cannot be said that an ordinarily prudent and diligent man would not, at that time, have acted in his own affairs as the special administrator acted in connection with the transaction of this particular item of business.

Under the facts presented in this case, this transaction should be, and is approved.

This cause is remanded to the District Court with instructions to modify its judgment in accordance with this opinion, and to allow appellant credit in his final account as such special administrator for the sum of $1326.79, the net proceeds in connection with the wheat item; the fees of the special administrator and his attorneys, as allowed by the court, to be paid from the funds of the estate when the appellant has delivered to respondent as administrator, all property and effects of the decedent and which came into his possession, except the warehouse receipt, which has been cashed; the special administrator to likewise have credit in his account for the expenditures approved by the District Court, as appears from the record.

No costs awarded.

Holden, C.J., Ailshie, Budge, and Givens, JJ., concur.