177 P.3d 378

**SAFE AIR FOR EVERYONE,**
Plaintiff–Appellant,

v.

**IDAHO STATE DEPARTMENT OF AGRICULTURE,** an agency of the State of Idaho; Sherman K. Takatori, in his capacity as ISDA Crop Residue Disposal Program Manager; Bryce Chittenden, in his capacity as ISDA Rathdrum Smoke Coordinator; Jan Chittenden, in her capacity as ISDA Rathdrum Prairie Smoke Coordinator; Boyd Lindsay, in his capacity as ISDA Palouse Airshed Smoke Coordinator; Rita Iverson, in her capacity as ISDA Clearwater Airshed Smoke Coordinator; and Heidi Vandyken, in her capacity as ISDA Boundary County Smoke Coordinator, Defendants–Respondents.

No. 33729.

Supreme Court of Idaho,
Boise, January 2008 Term.

Jan. 25, 2008.

Karen S. Lindholdt, Spokane, Washington, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondents. Clay Smith, Deputy Attorney General, argued.

EISMANN, Chief Justice.

This is an appeal from a judgment dismissing a claim that employees of the Idaho State Department of Agriculture violated the Open Meetings Act when they attended an inter-

governmental meeting to discuss issues relating to crop residue burning. We affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

In August 2002, the Coeur d'Alene Tribe, the Idaho Department of Environmental Quality (IDEQ), and the Idaho State Department of Agriculture (ISDA) entered into a memorandum of agreement relating to agricultural field burning. The parties agreed to coordinate, to the maximum extent possible, the implementation of their respective smoke management plans, including the sharing of information, equipment, personnel, other resources, and data. The parties also agreed to form a technical advisory group to develop and implement a plan of operations for 2003 and future burn seasons. The agreement expressly provided that it did not constitute any waiver of sovereign immunity by either the State or the Tribe and was intended solely to facilitate intergovernmental cooperation between the parties.

In July 2005, the Nez Perce Tribe, the United States Environmental Protection Agency (EPA), the IDEQ, and the ISDA entered into a similar agreement to jointly develop and implement a long-term smoke management strategy. They agreed to coordinate and assist each other in agricultural smoke management; to share information and data; to develop documents, reports, and materials; and to work together to coordinate burn decisions. They also agreed to coordinate on annual program evaluations in order to work together toward program improvements. Like the earlier agreement, this agreement also expressly provided that it did not constitute a waiver of sovereign immunity by any of the parties and was intended solely to facilitate intergovernmental cooperation.

The ISDA invited representatives from the Coeur d'Alene Tribe, the Nez Perce Tribe,

the IDEQ, the EPA and others to attend what was called the "Idaho Crop Residue End-of-Year Meeting" to be held on December 6 and 7, 2005. The meeting was not open to the public. The purpose of the meeting was to discuss various issues regarding crop residue burning and to reach consensus on any suggested changes. During the meeting, those present agreed upon various things ranging from changes to the ISDA website, to adding subjects to training programs, to changing the burn protocol to increase the Boundary County burn limit from 2400 acres to 3000 acres.

On January 4, 2006, the Plaintiff commenced this lawsuit alleging that the ISDA employees who attended the meeting violated the Idaho Open Meetings Act, I.C. §§ 67–2340 *et. seq.* The Defendants are the ISDA and those employees. The Defendants moved for summary judgment, which the district court granted, holding that the Open Meetings Act did not apply because the ISDA employees who attended the meeting were not a governing board. The Plaintiff then appealed.

## II. ANALYSIS

The issue presented by this appeal is whether the participation by ISDA employees at the Idaho crop residue end-of-year meeting violated the Idaho Open Meetings Act. Idaho Code § 67–2342 provides, "[A]ll meetings of a governing body of a public agency shall be open to the public." In order for the Act to apply, the ISDA employees would have to constitute a "governing body of a public agency."

The governing body of a public agency must consist of at least two members who have authority to make decisions for or recommendations to that agency.[1] In addition, a governing body must be required to make its decisions by majority vote at which a quorum is present.[2]

---

1. Idaho Code § 67–2341(5) states, " 'Governing body' means the members of any public agency which consists of two (2) or more members, with the authority to make decisions for or recommendations to a public agency regarding any matter."

2. Idaho Code § 67–2341(1) provides:
   "Decision" means any determination, action, vote or final disposition upon a motion, proposal, resolution, order, ordinance or measure on which a vote of a governing body is required, at any meeting at which a quorum is

The ISDA is not headed by a governing body. It is headed by a director who is authorized to "exercise all of the powers and duties necessary to carry out the proper administration of the department of agriculture." I.C. § 22–101. The director cannot be a governing body because the director is only one person and is not required to make decisions by majority vote at which a quorum is present. I.C. § 67–2341(1) & (5).

The Plaintiff contends that the ISDA employees who attended the meeting would constitute a governing body of a subagency within the ISDA. The director of the ISDA has organized the department into several divisions, with smaller organizational groups of employees within each division. Eight ISDA employees work in the crop residue disposal program, which is part of the division of agricultural resources. Those employees consist of three full-time employees, who are the supervisor, the program manager, the program coordinator, and five part-time employees, who are the field coordinators. The individuals named as defendants are the program manager, Sherman Takatori, and the five field coordinators. Mr. Takatori coordinated the end-of-the-year meeting at issue in this case, and he and the five field coordinators attended it. The Plaintiff argues that because these employees participated in making policy decisions at that meeting, they constitute a governing body of a subagency.

■ The legislature did not make application of the Open Meetings Act depend upon whether a particular decision could be classified as a policy decision. The Act does not contain any definition of "policy," and the definition of "decision" does not include that word. Whether or not the Act applies depends upon the body making the decision and the formalities required for it to make that decision.[3] The decision must be made by a governing body of a public agency, and that body must be required to make the decision by majority vote with a quorum present. I.C. § 67–2341(5) & (1).

The crop residue disposal program is not a public agency. Although the term "public agency" includes "any subagency of a public agency which is created by or pursuant to statute, ordinance, or other legislative act," I.C. § 67–2341(4)(d), that program was not created by or pursuant to statute. It was created by the director as part of the organizational structure that the director implemented for the more efficient operation of the department. As part of that organizational structure, the director assigned a small group of ISDA employees to the particular task of overseeing crop residue burning.

There are statutorily created subagencies within the ISDA, such as the state soil conservation commission, I.C. § 22–2718; the Idaho honey advertising commission, I.C. § 22–2804; the alfalfa and clover seed commission, I.C. § 22–4204; the state board of sheep commissioners, I.C. § 25–126; and the Idaho hop grower's commission, I.C. § 22–3104. However, there is no statute creating or authorizing the creation of a group of people within the ISDA who are to have the responsibility for overseeing crop residue burning.

■ Likewise, the ISDA employees who work in the crop residue disposal program are not members of a governing body. A governing body must be two or more "members of any public agency ... with the authority to make decisions for or recommendations to a public agency regarding any matter." I.C. § 67–2341(5). The Plaintiff contends that two or more employees of a public agency who have been delegated authority from their supervisor to make decisions or recommendations during the performance of their duties constitutes a governing body. That argument is incorrect.

■ "The court, in construing a statute, should aim to give it a sensible construction, such as will effectuate the legislative intent, and, if possible, avoid an absurd conclusion."

---

present, but shall not include those ministerial or administrative actions necessary to carry out a decision previously adopted in a meeting held in compliance with sections 67–2342 through 67–2346, Idaho Code.

**3.** The Act does provide that a "decision" does not include "those ministerial or administrative actions" necessary to carry out a decision previously made at a meeting held in compliance with the Act. I.C. § 67–2341(1).

*Hartman v. Meier*, 39 Idaho 261, 266, 227 P. 25, 26 (1924). When considering the Open Meetings Act in its entirety, it is obvious that the legislature did not intend that any group of two or more agency employees who had been delegated authority by their supervisor to make decisions while performing their jobs would constitute a governing body required to comply with the Act. That construction would be absurd.

The legislature chose the term "governing body" to refer to the group whose decisions must be made at open meetings. That term is typically used to refer to the group in charge of an entity or organization, not to its employees. For example, Idaho Code § 20–403 states, "There is hereby created the governing body which shall consist of the members of the board of correction." Idaho Code § 21–401 refers to the "governing bodies of such counties, highway districts and cities." Idaho Code § 22–2721 provides, "The governing body of the [soil conservation] district shall consist of five (5) supervisors, elected or appointed as provided in this chapter." Idaho Code § 33–122 requires the state board of education to transmit a copy of an engineer's report regarding the safety of a school "to the board of trustees of the school district wherein such building is situate, or to the governing body of any such school if it not be a public school." Idaho Code § 55–2405(2) refers to "agreements between public agencies" that are required to "be authorized by the governing body of each party to the agreement." Idaho Code § 63–804 imposes requirements upon the "council, trustees, board or other governing body of any taxing district." Idaho Code § 67–105 permits "the governing body of each political subdivision of this state" to meet somewhere other than its usual place in certain emergencies.

When both terms have been used together, it is clear that the legislature distinguished between the "governing body" and the "employees" of an entity. For example, Idaho Code § 7–1311(3) states, "Nothing contained in this chapter shall be construed as preventing the exercise of any power granted to the political subdivision, acting by and through the governing body, or any officer, agent or employee of the political subdivision, or otherwise, by any other law." Idaho Code § 59–513 provides, "The governing body of any county, city, or political subdivision of the state, shall supervise and regulate the deferred compensation program for its employees." Under Idaho Code § 59–804(4), "All official surety bonds, blanket surety bonds, or suitable crime insurance coverage of public officials or employees of a political subdivision shall be approved by the governing body of the political subdivision."

Under the Open Meetings Act, the governing body is defined as *members* of a public agency, not *employees* of a public agency. That distinction is significant. The legislature typically uses the word "members" when referring to those who make up a statutorily created board, commission, or other governing group. For example, Idaho Code § 20–204 limits the political activity of the "members of the board of correction and its officers and employees." Idaho Code § 20–301 grants immunity to the "members, officers, executive director and employees of the interstate commission." Idaho Code § 22–202 provides that if the board of county commissioners of a county of 200,000 population or less creates a county fair board, "it shall immediately appoint either five (5) or seven (7) persons to membership thereof," and Idaho Code § 22–204 requires that "[e]ach member of the county fair board" post a bond. Idaho Code § 22–435 creates a "state seed laboratory advisory board which shall consist of eight (8) official members and eight (8) ex officio alternates appointed by the director of the department of agriculture." Idaho Code § 22–4715 immunizes the State from liability "for the acts or omissions of the [Idaho oilseed] commission or any of its members, or any officer, agent or employee of the commission." Pursuant to Idaho Code § 40–302, "The [Idaho transportation] board shall be composed of seven (7) members to be appointed by the governor." Idaho Code § 40–514(2) creates "the public transportation advisory council to advise the Idaho transportation department on issues and policies regarding public transportation in Idaho" and provides that "[t]he advisory council shall be composed of six (6) members appointed by the Idaho transportation board." Idaho Code § 63–104 bars the

"members and employees of the state tax commission" from holding other offices. Idaho Code § 67–7443 prohibits "[m]embers of the [Idaho state lottery] commission, the director, and the employees of the lottery" from engaging in certain business relationships.

By definition, a "governing body" under the Open Meetings Act must have "the authority to make decisions for or recommendations to a public agency regarding any matter." Idaho Code § 67–2341(5). The employees do not have "*the* authority" to make decisions for or recommendations to the ISDA. Any decision they make can be countermanded by a supervisor, and their supervisor can likewise deny them permission to make recommendations. It is obvious from the context that *the authority* to make decisions for an agency or recommendations *to an agency* must be statutorily based. That would be consistent with the statutory definition of "decision" in the Act. It means "any determination, action, vote or final disposition upon a motion, proposal, resolution, order, ordinance or measure on which a vote of a governing body is required, at any meeting at which a quorum is present." I.C. § 67–2341(1). The legislature has required that various boards and commissions transact business at a meeting where a quorum is present. *E.g.,* I.C. § 20–207 (state board of correction); I.C. § 22–435(6) (state seed advisory board); I.C. § 22–1202 (Idaho potato commission); I.C. § 31–3705 (hospital board); I.C. § 31–5104(2) (commission appointed to study the form of county government); I.C. § 33–510 (board of trustees of a school district); I.C. § 36–102(g) (Idaho fish and game commission); I.C. § 39–8502 (the Lake Pend Oreille, Pend Oreille River, Priest Lake and Priest River commission); I.C. § 43–303 (board of directors of irrigation district); and I.C. § 54–2605(4) (Idaho plumbing board). It has not imposed that requirement upon groups of public employees.

In summary, the crop residue disposal program is not a subagency of the ISDA within the meaning of the Open Meeting Act, and the employees of the ISDA who work in that program are not a governing body as that term is defined in the Act. Therefore, the Act did not apply to the end-of-the-year meeting.

## III. CONCLUSION

The judgment of the district court is affirmed. We award costs on appeal to the respondent.

Justices BURDICK, J. JONES, W. JONES and HORTON concur.

