IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket 40262

| | | |
|---|---|---|
| IN THE MATTER OF THE CERTIFIED QUESTION OF LAW. | ) ) ) | |
| KAREN WHITE, an individual, and ELKHORN, LLC., a Florida limited liability company, | ) ) ) ) ) | Boise, January 2014 Term |
| Plaintiffs/Appellants, | ) ) | 2014 Opinion No. 26 |
| v. | ) ) ) | Filed: March 18, 2014 |
| VALLEY COUNTY, a political subdivision of the State of Idaho, | ) ) ) | Stephen W. Kenyon, Clerk |
| Defendant/Respondent. | ) ) ) | |

On order certifying question to the Idaho Supreme Court from the U.S. District Court for the District of Idaho, Hon. Edward J. Lodge, U.S. District Judge.

In response to the certified question, the Court held that, "The limitations period for statutory remedies made available under Idaho law to obtain a refund of an illegal county tax commences upon payment of the tax."

Borton Lakey Law Offices, Meridian, for appellants. Victor S. Villegas argued.

Givens Pursley LLP, Boise, for respondent. Christopher H. Meyer argued.

_____

J. JONES, Justice.

This case comes to the Court as a certified question from the U.S. District Court for the District of Idaho, the Honorable Edward J. Lodge, U.S. District Judge, presiding. Karen White and her development company, Elkhorn, LLC, seek to recover $166,496 paid to Valley County for "capital investments for roads in the vicinity of [their] White Cloud development." Pursuant to I.A.R. 12.3(c), this Court accepted the certified question and we hereby answer the same.

## I.
## BACKGROUND FACTS

When considering a certified question of law, this Court will consider "only those facts

contained in the [certification] order." *Kunz v. Utah Power & Light Co.*, 117 Idaho 901, 902 n.1, 792 P.2d 926, 927 n.1 (1990). Thus, the following facts are drawn and recited verbatim from the U.S. District Court's certification order (Order).

In 2005, Valley County (the "County") initiated a Capital Improvements Program ("CIP") in response to an increase in development within the County and in an attempt to mitigate the impacts of the developments on the County's roads and bridges. The CIP is described in the County's Master Transportation Plan as follows:

> **Capital Improvement Program Process and Purpose**
> **. . .**
>
> In 2005, the Valley County Commissioners initiated a Road Development Agreement (RDA) process **to require new developments to pay a fee to mitigate the impacts** of their developments on the roads and bridges in Valley County. The RDA process replaced the Capital Contribution Agreements that were used by Valley County for larger developments that needed infrastructure improvements. **The RDA requires all developers to pay a fee** based on the number of trips their developments generate. **Developers are, in effect, required to pay for the roadway capacity their developments use. The fee must be paid at time of final plat.** Credit is given for [right of way] required from the development and any in-lieu-of contributions, such as construction materials or developer sponsored construction of portions of roads and bridges.

(bolding and underlining provided by Plaintiffs).

During the same year the County initiated the CIP, Karen White (Plaintiff) and her father, E.T. Usher,[1] were in the process of developing a residential subdivision in Valley County known as White Cloud. The subdivision included a preliminary plat for 80 lots on 210 acres and was approved on May 12, 2005. Phase I of the development included 44 lots. All land within Valley County's jurisdiction is zoned multiple use, pursuant to Valley County's Land Use Development Ordinance. Within the district, various uses are listed as "allowed," while others are listed as "conditional" necessitating a conditional use permit ("CUP").

The CUP for Phase I of White Cloud was approved by the County on May 24, 2005. The CUP included as a condition that Plaintiff enter into a Development Agreement with the Board of County Commissioners. To satisfy this requirement, White entered into a Road Development Agreement ("RDA") with the County in June of 2006.

Negotiations on the RDA began sometime in the late spring or summer of 2005 and the

---

[1] Plaintiff's father is not a party to this action.

County has provided evidence that a draft RDA was sent to the engineering firm working on the White Cloud development in August of 2005. The final RDA was provided to Scott Findlay, project manager for White Cloud, on or about June 24, 2006. The final RDA differed from the draft RDA in that it covered only the 44 lots being developed in Phase I and eliminated an offset for a dedicated roadway right of way. The RDA contained the following provision: "The developer agrees to pay Valley County their proportionate share of roadway costs for a total cash payment of $166,496 due at the time of Final Plat approval." Plaintiff signed the RDA on June 26, 2006, and paid the required fees under the RDA on July 21, 2006. The County executed the RDA on July 24, 2006, and the RDA was recorded on July 26, 2006.

Phase I of White Cloud has been completed and it appears undisputed by the parties that the RDA monies paid for Phase I were used by the County to complete capital investments for roads in the vicinity of the White Cloud development.

The County concedes that it did not adopt an impact fee ordinance or administrative procedures for the impact fee process as required by the Idaho Development Impact Fees Act ("IDIFA"). Idaho Code § 67-8201 *et seq.* IDIFA prohibits certain impact fees unless they are imposed pursuant to an ordinance in compliance with the statute. The County concedes it did not enact an IDIFA-compliant ordinance, because, at the time, the County believed in good faith that none was required. . . .

On October 1, 2009, Plaintiff filed suit against the County claiming that the road development fee imposed by the County as a condition for approval of the White Cloud project violated Idaho state law and deprived Plaintiff of due process under both the federal and Idaho constitutions.[2] In her Second Amended Complaint, Plaintiff raised two claims for relief. The first claim for relief alleged that "Valley County's practice of requiring developers to enter into a Road Development Agreement (or any similar written agreement) solely for the purpose of forcing developers to pay money for its proportionate share of road improvement costs attributable to traffic generated by their development is a disguised impact fee, is illegal and therefore should be enjoined." The first claim for relief also alleged that, because the County failed to enact an impact fee ordinance under IDIFA, the imposition of the road development

---

[2] Elkhorn, LLC, is also a named plaintiff in this case. Elkhorn is a business entity organized under the laws of the State of Florida and is the assignee of Phase II of the White Cloud Subdivision. Elkhorn's claims are not relevant to the matter currently before the Court and all references to "Plaintiff" relate to Plaintiff Karen White.

3

fees constituted an unauthorized tax.

Plaintiff's second claim for relief alleged that the County's imposition of the road development fee constituted a taking under the federal and Idaho constitutions and sought relief under the theory of inverse condemnation. Ultimately, Plaintiff has requested that the Court declare the County's practice of imposing impact fees illegal under Idaho law, enjoin the County from the continued implementation of the practice, and order the County to refund the $166,496 paid by Plaintiff in connection with Phase I of the White Cloud project.

The County maintains that Plaintiff voluntarily agreed to pay the RDA monies. Plaintiff denies that the payment was voluntary since it was required to obtain the final plat approval. It is undisputed that Plaintiff did not file an appeal of the CUP or final plat approval for Phase I after Plaintiff paid the RDA fees of $166,496. Nor did Plaintiff file an inverse condemnation claim in state court regarding the monies paid under the RDA for Phase I.

## II.
## PROCEDURAL HISTORY

The U.S. District Court noted the rather lengthy procedural history of the case, including two summary judgment motions by the County. The first motion sought dismissal of all federal and state claims. The District Judge granted summary judgment with regard to the federal takings claim but denied it with regard to the state law claims, observing that "the parties were unclear on which statute of limitations applied, but the County ultimately argued that 'Plaintiffs' state law claims (takings and anything else) are subject to the state's catch-all four-year statute of limitations." The District Court declined to grant summary judgment on the inverse condemnation claim because, "[v]iewing the facts in the light most favorable to Plaintiffs," they "were not 'fully aware' of the alleged taking until they received the final RDA setting forth the requirement that $166,496 was due for proportional road impact fees relating to Phase I of the project." The District Court noted that the County had not made any arguments with regard to an accrual date for the illegal tax claim.

The County again moved for summary judgment and also filed a motion to certify several questions to this Court. In its Order, the District Court determined that only one question met the requirements for certification under I.A.R. 12.3. According to the Court, "[t]hat question concerns the accrual date of Plaintiff's claim that the road development fees imposed by the County constitute an illegal tax under Idaho law."

4

## III.
## CERTIFIED QUESTION OF LAW

The District Court certified the following question:

> Under Idaho law, when does the statute of limitations begin to run on a cause of action arising out of an allegedly illegal impact fee imposed by a local government entity as part of a land use application?

Because this question involves some fine distinctions and qualifications, the Court deems it necessary to reword the question in such a fashion that it comports with the intent of the Order without entailing possible unintended consequences. For instance, the question initially proposed by the County in its motion inquired about an allegedly illegal "tax," but the Order inquires about an allegedly illegal "impact fee." In their briefing, the parties used the terms "tax" and "fee" interchangeably, which provides a source of confusion. Decisions made by this Court following the certification of the question may well have a bearing upon the issues subsequently to be determined by the U.S. District Court. In that regard, the Order inquires about an imposition made by a local government entity as part of a land use application, which implicates the Local Land Use Planning Act (LLUPA), I.C. §§ 67-6501 to 6536. Because we have not been requested to address the issue of exhaustion of remedies under LLUPA, we have further revised the question to make it clear that we do not opine on that issue. Therefore, we revise the question as follows:

> When does the limitations period commence for statutory remedies made available under Idaho law to obtain a refund of an illegal county tax?

## IV.
## STANDARD OF REVIEW

"Courts of the United States may certify a controlling question of law in a pending action to the Idaho Supreme Court for determination where there is no controlling precedent in the decisions of the Idaho Supreme Court and the determination would materially advance the orderly resolution of the litigation in the United States court." *St. Luke's Magic Valley Reg'l Med. Ctr. v. Luciani*, 154 Idaho 37, 39–40, 293 P.3d 661, 663–64 (2013) (citing I.A.R. 12.3(a)). "The date when a cause of action accrues is a question of law to be determined by this Court where no disputed issues of material fact exist." *Harris v. State, ex rel. Kempthorne*, 147 Idaho 401, 405, 210 P.3d 86, 90 (2009). The Court's role "is limited to answering the certified question" when the question it presents is narrow. *Peone v. Regulus Stud Mills, Inc.*, 113 Idaho

5

374, 375, 744 P.2d 102, 103 (1987) (noting that "to now decide [extraneous matters] would result in an advisory opinion on a question not certified").

<h1 style="text-align:center">V.</h1>
<h1 style="text-align:center">QUESTIONS THIS COURT DECLINES TO ANSWER</h1>

The County has briefed and argued a number of issues that go beyond the specific inquiry addressed to us by the U.S. District Court. The Plaintiffs[3] do so to a lesser extent. Because the answer we give to the narrow question addressed to us depends on certain legal assumptions—including but not limited to: whether the road development fee was voluntarily agreed to in an arm's length transaction that benefitted both parties; if not, whether the fee is violative of IDIFA and, if so, whether it is an illegal tax; and whether or not the fee should have been challenged in the zoning and planning process—it is important for this Court to state what we are not deciding. Furthermore, because the determination of some of these ancillary issues, which have a bearing on the question we are asked to answer, are dependent upon a full developed factual record that we do not have, we are simply not in a position to address those ancillary matters.

We first note the comments of the District Judge in the Order:

> As a preliminary matter, given the claims and defenses raised in this case, and the fact that two cases raising similar issues are currently on appeal before the Idaho Supreme Court,[4] it is of some importance to explain what this Court is not asking the Idaho Supreme Court to address in this request for certification. This Court is not asking the Idaho Supreme Court to address the accrual date for inverse condemnation claims. The Idaho Supreme Court has addressed that particular legal issue in multiple cases. *See, e.g., McCuskey v. Canyon County Comm'rs*, 912 P.2d 100 (Idaho 1996); *Rueth v. State*, 644 P.2d 1333 (Idaho 1982); *Tibbs v. City of Sandpoint*, 603 P.2d 1001 (Idaho 1979). Those cases stand for the proposition that, in the context of inverse condemnation claims, "[t]he time of taking occurs, and hence the cause of action accrues, as of the time that the full extent of the plaintiff's loss of use and enjoyment of the property becomes apparent." *McCusky*, 912 P.2d at 104. This is the date on which the plaintiff "was fully aware of the extent to which [the government] interfered with his full use and enjoyment of the property." *Id.*

> In *Tibbs v. City of Sandpoint*, the Idaho Supreme Court stated that "[t]he actual date of taking, although not readily susceptible to exact determination, is to be fixed at the point in time at which the impairment, of such a degree and kind as to constitute a substantial interference with plaintiffs' property interest, *became*

---

[3] From this point forward, White and Elkhorn will be referred to as "Plaintiffs."

[4] The two cases cited in the District Court's footnote are *Hehr v. City of McCall* and *Buckskin v. Valley Cnty.*, both of which have subsequently been decided by this Court. *Hehr v. City of McCall*, 155 Idaho 92, 305 P.3d 536 (2013) and *Buckskin v. Valley Cnty.*, 154 Idaho 486, 300 P.3d 18 (2013).

*apparent*." 603 P.2d at 1005 (emphasis added). Explaining when an interference becomes "apparent," in *Rueth v. State*, the Idaho Supreme Court held that the date of a taking accrued on the date at which time there was "recognition of the severity of the problem." 644 P.2d at 1338.

Therefore, we do not address the issue of the application of the statute of limitations for an inverse condemnation claim. The District Court correctly concluded that the four-year statute of limitations in Idaho Code § 5-224 applies to such a claim, citing several cases that deal with the issue of when such a claim accrues.

Although the question proposed to us would only apply in the situation where a fee was determined to be an illegal tax, we express no opinion as to the legality of the road development fee at issue here. Just because what appears to be an impact fee is not IDIFA compliant does not necessarily mean that it is an illegal fee. In *Buckskin*, where the County had no IDIFA compliant ordinance, this Court held that "a developer and a governing board can legally enter into a voluntary agreement to fund capital improvements to be made by the governmental entity that facilitate the developer's development plans." 154 Idaho at 493, 300 P.3d at 25. That case also involved a suit by a developer against the County, seeking recovery of road development fees based on claims of an illegal impact fee and inverse condemnation. *Id.* at 489, 300 P.3d at 21. We first addressed the legality of the agreement, finding that issue to be "central to the determination" of the case. *Id.* at 490, 300 P.3d at 22. We observed that "a voluntary agreement between a governmental entity and a developer, whereby the developer voluntarily agrees to pay for capital improvements that will facilitate his development plans, does not run afoul of IDIFA. The key is whether the agreement is truly voluntary." *Id.* at 491, 300 P.3d at 23. In *Buckskin*, we upheld the district court's grant of summary judgment against Buckskin because the record contained no evidence "indicating that Buckskin was strong-armed into signing the . . . RDA; that it voiced any objection to anyone, at any time, to making the payment required under [the] agreement; or that it did not, as the County avers, benefit from the agreement by virtue of the road improvements facilitated by its payments."[5] *Id.* at 492, 300 P.3d at 24. The question of

---

[5] One possible difference between this case and *Buckskin* is that in *Buckskin* the developer proposed payment of a road development fee in its initial application, whereas the record here does not disclose that to be the case. *Id.* at 492, 300 P.3d at 24. However, in *Buckskin* the developer contended it only offered to pay the fee because it knew the County would require it. *Id.* Ultimately, however, this disputed issue was not deemed material to our decision so as to preclude summary judgment against the developer.

whether or not such an agreement is voluntarily entered into by the developer is factual in nature and will therefore need to be determined by the U.S. District Court.

We have not been asked to address the County's contention that the Plaintiffs failed to exhaust their administrative remedies under the LLUPA. We addressed the exhaustion issue in *Buckskin* (154 Idaho at 493−94, 300 P.3d at 25−26) but decline the County's invitation to address it here.

## VI.
### THE LIMITATIONS PERIOD FOR STATUTORY REMEDIES MADE AVAILABLE UNDER IDAHO LAW TO OBTAIN A REFUND OF AN ILLEGAL COUNTY TAX COMMENCES UPON PAYMENT OF THE TAX.

While the parties dispute the date on which the Plaintiffs' state-law claims began to run, both parties assert the claims are subject to Idaho Code § 5-224. Under that statute, "[a]n action for relief not hereinafter provided for must be commenced within four (4) years after the cause of action shall have accrued." I.C. § 5-224. Plaintiffs contend that where a person seeks to obtain a refund of money paid to satisfy an impact fee that is actually an illegal tax, the four-year statute of limitations in I.C. § 5-224 runs from the date the payment was made. The County, however, argues that this "case consists of a single cause of action, informally known as inverse condemnation," and should be treated as such for purposes of determining the accrual date. The County contends the action accrued upon issuance of the CUP on May 24, 2005, or at the latest when the draft RDA was furnished to Plaintiffs' engineering firm in August of 2005.

A careful reading of the Order discloses that the District Judge had concerns about treating a tax refund claim the same as an inverse condemnation claim. Otherwise, there would be no apparent reason for certifying the question. In this regard, the District Judge was correct.

Before proceeding further, it is necessary to acknowledge some confusion resulting from the parties' interchangeable use in their briefing of the terms "fee" and "tax." A tax is generally a tax. A fee can be either a legitimate fee or a disguised tax. The question as to the true nature of the amount sought to be recovered by the Plaintiffs will necessarily be determined by the District Judge. For purposes of answering the certified question, we will assume that we are presented with a situation where the payment sought to be recovered by the Plaintiffs is clearly an illegal tax. Indeed, they state in their brief, "White filed this lawsuit seeking a declaration that the payment of the impact fee was an illegal tax and therefore the money White paid should be returned."

The process of avoiding or recovering payment of an allegedly illegal county tax is informed by a framework of statutes and caselaw. It is useful to review some history in Idaho county tax law. In *Howell v. Board of Comm'rs of Ada Cnty.*, the Ada County Board of Commissioners assessed the plaintiff more tax than he actually owed. 6 Idaho 154, 53 P. 542 (1898). After paying the tax, the plaintiff presented his refund claim to the board of commissioners, which denied his claim. *Id.* at 155, 53 P. at 542. He then appealed, but the Court ultimately found that the board did not have the authority to refund the plaintiff's tax payment because at the time, we knew "of no law in this state, nor has counsel cited us to any, authorizing a board of county commissioners to refund a tax which has been paid, whether the tax is illegal or not." *Id.* at 156, 53 P. at 543. The Court went on to explain the process by which a taxpayer may seek to avoid or recover an erroneous payment:

> Our statutes are ample to protect the citizen from illegal taxation, and in case an illegal tax is levied, if the person fails to appear before the board of equalization that is provided for by law, he has another remedy—by injunction—to prevent the collection thereof. But when, as in this case, there is no appearance before the board of equalization, and no application made for the correction of said assessment, and the tax is voluntarily paid, the board is without authority to refund the tax so paid.

*Id.* at 156–57, 53 P. at 543.

The Court subsequently observed that in *Howell*, "the court held that in the absence of a statute county commissioners had no right to refund taxes voluntarily paid though illegal and void." *Asp v. Canyon Cnty.*, 43 Idaho 560, 563, 256 P. 92 (1927). In *Asp*, the issue before the Court was whether the plaintiff was entitled to a refund of taxes paid under an assessment later found to be illegal. *Id.* The Court held that the plaintiff was not entitled to a refund because he did not pay the tax under protest, explaining that "[t]he general rule is that taxes voluntarily paid may not be recovered . . . . Not having been paid under protest, the taxpayers were not 'entitled'" to a refund. *Id.* at 563, 256 P. at 92–93.

In *Walker v. Wedgwood*, 64 Idaho 285, 130 P.2d 856 (1942), the Court considered whether a plaintiff was required to pay under protest to recover income taxes paid to the State when the income tax statutes did not mention a requirement of payment under protest. At the time the income tax law was passed, the Court "had uniformly held that other forms of taxes could not be recovered unless there was a protest made at the time of their payment." *Id.* at 289, 130 P.2d at 857 (citing *Howell* and *Asp*).

We held in *Lundy v. Pioneer Irr. Dist.*, that the plaintiffs were not entitled to relief from

assessments they had paid when they had previously "failed to avail themselves" of the rights statutorily granted them under former I.C.A. § 42-703 (now I.C. § 43-703). 52 Idaho 683, 690, 19 P.2d 624, 626 (1933). The plaintiffs, having "failed to appear before the board of correction and present their objections, are deemed to have waived them, and thus having a remedy at law and failing to avail themselves thereof, they are precluded from obtaining equitable relief." 52 Idaho at 690–91, 19 P.2d at 626.

The foregoing cases tell us that, generally, a taxpayer may not seek to obtain a refund of a tax, whether legal or not, without having lodged a protest to payment of the same. However, we have held that the payment under protest requirement does not apply to an illegal fee. *BHA Investments Inc. v. City of Boise,* 141 Idaho at 168, 176, 108 P.3d 315, 323 (2004). This brings us back to the issue of whether the charge in this case was a tax or a fee and, again, we decline to make that determination. The more important lesson to draw from these cases is that, regardless of whether payment is made under protest, available statutory remedies must be resorted to in order to recover what is alleged to be an illegal tax.

There are two statutory remedies that appear to be available to a taxpayer in the circumstances presented in this case. Idaho Code § 31-1501 applies to general claims asserted against the county and I.C. § 63-1308 applies to property taxes or money paid to a county. The limitations period for the former provision is one year and that for the latter provision is 60 days after payment.

Idaho Code § 31-1501 provides:

> The board of commissioners must not hear or consider any claim against the county unless accompanied by a receipt or documentation giving all items of the claim, duly certified by the authorized county official that the amount claimed is justly due or services were rendered. No claim shall be paid if not presented to the board within a year from the date the bill was generated.

The predecessor of this provision, C.S. § 3506 (1919), was held in *Wilson v. Twin Falls Cnty.* to apply to proceedings by a taxpayer to obtain a refund of amounts paid for void delinquency tax certificates. 47 Idaho 527, 531, 277 P. 1114, 1115 (1929). The "date the bill was generated" would, in the instance of the payment of a tax, be the date of payment.

Idaho Code § 63-1308(2) provides: "An action against a county . . . for property taxes or money paid to such county . . . under protest . . . and which it is claimed ought to be refunded, shall be commenced within sixty (60) days after such payment." While one might argue that this provision applies only to property taxes, I.C. § 63-1301 would indicate otherwise. That section

10

says that "[t]he provisions of [Title 63 of the Idaho Code] governing . . . collection of state and county property taxes, are hereby made applicable to all general and special taxes of any taxing district . . . under any general or special laws of this state."

These seemingly short limitations provisions are not unreasonable when considered in context. This Court recently held that a developer requesting a refund of what was determined to be an illegal city tax had to file a claim for the refund within 180 days from the date the claim arose in order to pursue recovery. *Hehr*, 155 Idaho at 96, 305 P.3d at 540. According to the Court:

> Idaho Code § 50-219 states, "All claims for damages against a city must be filed as prescribed by chapter 9, title 6, Idaho Code." Idaho Code § 6-906 requires that a notice of claim against a city be filed with the city clerk or secretary within 180 days from the date the claim arose or reasonably should have been discovered, whichever is later. Greystone concedes that section 6-906's notice requirement applies to its state law claim and that more than 180 days passed after this claim initially accrued. Thus, Greystone failed to provide sufficient notice of its state law inverse condemnation claim . . ."

*Id.* Of course, I.C. § 50-219 does not apply to claims against counties. However, I.C. § 31-1501 does apply to counties and imposes a one year cut-off for claims against the county.

It all boils down to this: a person wishing to challenge an allegedly illegal tax must either pay the tax under protest and then bring a cause of action in court within sixty days or file a claim with the board of county commissioners within a year.[6] In either case, the limitations period commences upon payment.

## VII.
## CONCLUSION

Based on the foregoing, we provide the following answer to the certified question: "The limitations period for statutory remedies made available under Idaho law to obtain a refund of an illegal county tax commences upon payment of the tax." No costs are awarded.

Chief Justice BURDICK, and Justices EISMANN, W. JONES, and HORTON CONCUR.

---

[6] As previously mentioned, we decline to address how Plaintiffs' claim may be affected by the provisions of LLUPA.