## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 45187

|  |  |  |
|---|---|---|
| In Re: Decision on Joint Motion to Certify Question of Law to the Idaho Supreme Court (Dkt. 31, 32, 45) and Order of Certification. | ) ) ) | |
| -------------------------------------------------------- | ) | |
| POCATELLO HOSPITAL, LLC dba PORTNEUF MEDICAL CENTER, | ) ) ) | Boise, December 2017 Term |
| Plaintiff-Appellant, | ) ) | 2018 Opinion No. 8 |
| v. | ) ) | Filed: January 17, 2018 |
| CORIZON LLC, | ) ) | Karel A. Lehrman, Clerk |
| Defendant-Respondent. | ) ) | |

Certified question of law from the United States District Court, District of Idaho. Hon. Ronald E. Bush, U.S. Magistrate Judge.

Certified question of law answered in the negative.

Racine, Olson, Nye. Budge & Bailey, Chtd., Pocatello, for appellant. Scott J. Smith argued.

Elam & Burke, Boise, for respondent. John J. Burke argued.

_____

BURDICK, Chief Justice.

This case arrives at the Idaho Supreme Court as a certified question of law from the United States District Court for the District of Idaho. The question certified is "[w]hether, for purposes of the dispute in this lawsuit, the terms 'state board of correction' as used in Idaho Code § 20-237B(1) and 'department of correction' as used in Idaho Code § 20-237B(2), include privatized correctional medical providers under contract with the Idaho Department of Correction." We answer the question certified in the negative.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

When addressing a certified question of law, this Court will consider "only those facts contained in the [certification] order." *Kunz v. Utah Power & Light Co.*, 117 Idaho 901, 902 n.1, 792 P.2d 926, 927 n.1 (1990); *accord White v. Valley Cnty.*, 156 Idaho 77, 78, 320 P.3d 1236, 1237 (2014); *St. Luke's Magic Valley Reg'l Med. Ctr. v. Luciani*, 154 Idaho 37, 39, 293 P.3d 661, 663 (2013). Thus, the following facts to which the parties have stipulated "are drawn and recited verbatim from the U.S. District Court's certification order[.]" *White*, 156 Idaho at 78, 320 P.3d at 1237.

> For a number of years, the Idaho Department of Correction [("IDOC" or "department of correction")] has contracted with Corizon, LLC ("Corizon"), a private provider of prison healthcare services, to provide healthcare services to IDOC inmates in custody and to indemnify IDOC from any claims associated with those services. The current contract between IDOC and Corizon began January 1, 2014, and runs through December 31, 2018 (the "Contract").

> The Contract resulted from a Request for Proposal ("RFP") issued by IDOC for healthcare contractors. The RFP included language that stated IDOC was pursuing a program that would allow the selected contractor to realize reduced costs for inmates hospitalized for over 24 hours. If implemented, the program was intended to apply Medicaid rates to those services provided during the hospital stay. Further, the per diem rate to be paid under the Contract would be required to change to a new per diem with Medicaid rates that the State would specify at that time.

> As described in more detail below, IDOC and Corizon are in disagreement about how much is owed to Corizon as payment for services that fall under the hospitalization services. The parties identify these provisions of their Contract as relevant to their dispute:

> 1. IDOC agreed to pay a fixed rate per inmate per day;
> 2. In exchange for this fixed rate, Corizon agreed to provide comprehensive healthcare to inmates, to assume "full risk" of all comprehensive healthcare for inmates, and to "absorb" any and all associated costs;
> 3. IDOC will not consider amending the contract to increase IDOC's costs unless Corizon establishes among other things that: (1) the condition requiring amendment was not reasonably foreseeable at the time Corizon submitted its Proposal; and (2) Corizon has made all reasonable efforts to address the problem at no increased cost to IDOC;
> 4. Corizon agreed to provide healthcare services on-site at prisons to the greatest extent possible and to develop a network of local medical providers for necessary medical services not available on-site;

5. Corizon agreed to be responsible for payment of all medical claims from medical providers, to have contracts or written agreements with medical providers in place for both inpatient and outpatient services, and to negotiate payment rates with those medical providers;

6. Corizon agreed that its payments to medical providers would be made within 30 days of Corizon's receipt of an invoice from a medical provider; and

7. Corizon agreed to indemnify IDOC from any and all claims associated with the provision of healthcare services to inmates.

Corizon often contracted with local medical providers for discounted and/or reduced rates on healthcare services for inmates, including inmates at the Pocatello Women's Correctional Center ("PWCC"). One such contract for PWCC inmates was a "Hospital Services Agreement" ("HSA") between Corizon and a local hospital, Portneuf Medical Center ("PMC").[1] In that agreement, PMC was to provide hospitalization and other inpatient and outpatient-related services and supplies to inmates at Corizon's request. PMC agreed to a discounted rate for those healthcare services, with Corizon to pay those charges within 30 days from receipt. PMC was to submit all claims directly to Corizon and not seek payment from IDOC. Claims not timely paid accrued interest.

The HSA between Corizon and PMC began on January 1, 2011, prior to the January 1, 2014 effective date of the current contract between Corizon and IDOC. Corizon paid the full contract rate under the HSA to PMC for healthcare services provided from January 1, 2011, through June 30, 2014. The dispute in this case stems from the fact that the HSA rate is greater than the Medicaid reimbursement rate.

On March 18, 2014, Corizon sent a letter to IDOC which stated the following:

> Corizon is requesting a formal contract amendment consistent with the program outlined in [Corizon's Request for Proposal] and within the scope of Idaho Code § 20-237B. Corizon will provide notification to hospitals that Corizon will pay for inpatient services rendered after July 1, 2014 at the Medicaid reimbursement rate . . . [.]
>
> This amendment will reduce the current per diem rate by $0.65 as outlined in [the Cost Proposal Form]. This item is per diem cost per offender per day as Per Diem 1 with Medicaid Rates based on 7100 inmates which includes Idaho Correctional Center (ICC).
>
> This will reduce the per diem of $15.31 to $14.66 starting on July 1, 2014 . . . [.]

IDOC accepted Corizon's proposal.

---

[1] As footnoted in the certification order, "Defendant Pocatello Hospital, LLC, does business as Portneuf Medical Center."

Corizon claims to have sent a letter to PMC in May of 2014, stating that as of July 1, 2014, any contract rate set out in the HSA would be superseded by the statutory reimbursement rate set forth in Idaho Code § 20-237B. PMC says it never received such a letter. Regardless, as of July 1, 2014, Corizon has paid PMC at the Medicaid reimbursement rate identified in the statute. PMC objected to the reduction in payment, contending that it should be paid at the higher contract rate set out in the HSA.

On September 29, 2015, Corizon gave written notice to PMC exercising its option to terminate the HSA without cause. Since January 1, 2016, there is no contractual agreement between Corizon and PMC as to payment for medical care rendered to prisoners. Prisoners have continued to receive medical care from PMC. However, since January 1, 2016, Corizon has paid PMC at the Idaho Medicaid reimbursement rate provided in I.C. § 20-237B. Corizon contends that this rate is required by the IDOC and state law, and that PMC must accept payment at this rate. PMC contends that payment amounts made by Corizon to PMC for medical care rendered to prisoners are not limited to the Idaho Medicaid reimbursement rate set out in § 20-237B.

. . . .

As a result of this dispute, PMC sued Corizon. PMC raises four claims for relief: (1) a breach of the IDOC contract;[2] (2) breach of implied contract; (3) unjust enrichment; and (4) declaratory judgment. PMC seeks payment of the "usual and customary fees"[3] for the healthcare services provided to PWCC inmates by PMC beginning on January 1, 2016, after the contract between PMC and Corizon was terminated.[4]

The parties believe that their dispute turns upon the interpretation of Idaho law which has not been previously considered by the Idaho Supreme Court.

(internal citations omitted).

The parties filed a joint motion to certify a question of law to this Court on February 17, 2017, and framed the question as follows:

Is PMC required to accept an amount no greater than the reimbursement rate applicable based on the Idaho Medicaid reimbursement rate consistent with Idaho Code § 20-237B from Corizon as full and reasonable payment for medical treatment provided by PMC to Idaho Department of Correction inmates within Corizon's care, absent a binding contract?

On June 30, 2017, the United States District Court for the District of Idaho granted the parties' joint certification motion and reframed the question as "[w]hether, for purposes of the dispute in this lawsuit, the terms 'state board of correction' as used in Idaho Code § 20-237B(1)

_____

[2] As footnoted in the certification order, "PMC alleges it [is] a third-party beneficiary of the IDOC Contract."

[3] As footnoted in the certification order, "[t]he difference in the 'usual and customary' fees and what Corizon has paid PMC was $373,007.04 as of June 27, 2016."

[4] As footnoted in the certification order, "[t]he parties reached an agreement out of court and PMC dismissed its first cause of action seeking damages for services from July 1, 2014, to December 31, 2015, when the HSA was still in place."

4

and 'department of correction' as used in Idaho Code § 20-237B(2), include privatized correctional medical providers under contract with the Idaho Department of Correction."[5] On August 10, 2017, this Court accepted the certified question and designated PMC as Appellant and Corizon as Respondent. On November 16, 2017, this Court granted IDOC's application for leave to file a brief as *amicus curiae* in support of Corizon.

## II. CERTIFIED QUESTION OF LAW

1.  Whether, for purposes of the dispute in this lawsuit, the terms "state board of correction" as used in Idaho Code § 20-237B(1) and "department of correction" as used in Idaho Code § 20-237B(2), include privatized correctional medical providers under contract with the Idaho Department of Correction.

## III. ANALYSIS

Courts of the United States may certify a controlling question of law in a pending action to the Idaho Supreme Court where there is no controlling precedent in Idaho Supreme Court decisions and the determination would materially advance the orderly resolution of the litigation in the United States court. The Court's role "is limited to answering the certified question" when the question presented is narrow.

*Doe v. Boy Scouts of Am.*, 159 Idaho 103, 105, 356 P.3d 1049, 1051 (2015) (citations omitted).

Raised for this Court's interpretation is Idaho Code section 20-237B, which provides:

(1) The state board of correction shall pay to a provider of a medical service for any and all prisoners, committed to the custody of the department of correction, confined in a correctional facility, as defined in section 18-101A(1), Idaho Code, an amount no greater than the reimbursement rate applicable based on the Idaho medicaid reimbursement rate. This limitation applies to all medical care services provided outside the facility, including hospitalizations, professional services, durable and nondurable goods, prescription drugs and medications provided to any and all prisoners confined in a correctional facility, as defined in section 18-101A(1), Idaho Code. For required services that are not included in the Idaho medicaid reimbursement schedule, the state board of correction shall pay the reasonable value of such service.

(2) For the purposes of subsection (1) of this section, the term "provider of a medical service" shall include only companies, professional associations and other health care service entities whose services are billed directly to the department of correction. The term "provider of a medical service" shall exclude:

(a) Privatized correctional medical providers under contract with the department of correction to provide health care to prison inmates;
(b) Private prison companies;

---

[5] The parties did not object below, nor do they object here, to the district court's reframing of the certified question.

(c) Out-of-state correctional facilities contracting with the department of correction to house prisoners;

(d) County jails; and

(e) Companies, professional associations and other health care service entities whose services are provided within the terms of agreements with privatized correctional medical providers under contract with the department of correction, private prison companies and county jails.

"Because the question is one of law, this Court exercises free review." *Harrigfeld v. Hancock*, 140 Idaho 134, 136, 90 P.3d 884, 886 (2004). Statutory interpretation that turns on "[l]egislative definitions of terms included within a statute" presents a straight-forward analysis, as those definitions "control and dictate the meaning of those terms as used in the statute." *State v. Yzaguirre*, 144 Idaho 471, 477, 163 P.3d 1183, 1189 (2007). "Statutory definitions provided in one act do not apply 'for all purposes and in all contexts but generally only establish what they mean where they appear in that same act.' " *Id.* (quoting *Maguire v. Yanke*, 99 Idaho 829, 836, 590 P.2d 85, 92 (1978)). If statutory interpretation involves more than just statutorily-defined terms,

[t]he statute is viewed as a whole, and the analysis begins with the language of the statute, which is given its plain, usual and ordinary meaning. In determining the ordinary meaning of the statute, effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant. However, if the language of the statute is capable of more than one reasonable construction it is ambiguous, and a statute that is ambiguous must be construed with legislative intent in mind, which is ascertained by examining not only the literal words of the statute, but the reasonableness of the proposed interpretations, the policy behind the statute, and its legislative history.

*Taylor v. AIA Servs. Corp.*, 151 Idaho 552, 561–62, 261 P.3d 829, 838–39 (2011) (quoting *BHC Intermountain Hosp., Inc. v. Ada Cnty.*, 150 Idaho 93, 95, 244 P.3d 237, 239 (2010)).

The question certified here raises two primary inquiries. The first is whether the " 'state board of correction' as used in Idaho Code § 20-237B(1) . . . include[s] privatized correctional medical care providers under contract with [IDOC]." As noted, section 20-237B(1) states that "[t]he state board of correction shall pay to a provider of a medical service . . . an amount no greater than the reimbursement rate applicable based on the Idaho medicaid reimbursement rate." The "state board of correction" is mandated by article X, section 5 of the Idaho Constitution, which states:

The state legislature shall establish a nonpartisan board to be known as the state board of correction, and to consist of three members appointed by the

governor, one member for two years, one member for four years, and one member for six years. After the appointment of the first board the term of each member appointed shall be six years. This board shall have the control, direction and management of the penitentiaries of the state, their employees and properties, and of adult felony probation and parole, with such compensation, powers, and duties as may be prescribed by law.

Under this constitutional command, the Legislature established the state board of correction and defined it by statute as

a nonpartisan board of three (3) members to be known as the state board of correction, referred to in this chapter as the board, appointed by the governor to exercise the duties imposed by law. The board shall be the constitutional board of correction prescribed by section 5, article X, of the constitution of the state of Idaho. Not more than two (2) members shall belong to the same political party. Any person appointed a member of the board shall hold office for six (6) years. Vacancies in the membership of the board shall be filled in the same manner in which the original appointments are made.

I.C. § 20-201A(1). Neither article X, section 5 of the Idaho Constitution nor section 20-201A(1) say anything of privatized medical care providers under contract with IDOC. We thus conclude the "state board of correction" referenced in section 20-237B(1) does not include privatized medical care providers under contract with IDOC.

The second inquiry raised in the question certified is whether the " 'department of correction' as used in Idaho Code § 20-237B(2) . . . include[s] privatized correctional medical care providers under contract with [IDOC]." As noted, section 20-237B(2) clarifies that "the term 'provider of a medical service' shall include only companies, professional associations and other health care service entities whose services are billed directly to the department of correction." The Legislature created the "department of correction" by statute, and it "consist[s] of [1] the board of correction and [2] the commission of pardons and parole. The department of correction shall, for the purposes of section 20, article IV, of the constitution of the state of Idaho, be an executive department of state government." I.C. § 20-201. The state board of correction, as noted previously, is "a nonpartisan board of three (3) members . . . appointed by the governor to exercise the duties imposed by law." *Id.* § 20-201A(1); *see also* Idaho Const. art. X, § 5. And the commission of pardons and parole is "composed of seven (7) members" who "serve at the pleasure of the governor . . . ." I.C. § 20-210. In these statutory provisions, the Legislature said nothing of privatized medical care providers under contract with IDOC.

7

Consequently, we conclude the "department of correction" referenced in section 20-237B(2) does not include privatized medical care providers under contract with IDOC.

Section 20-237B as a whole supports our conclusions. *See Taylor*, 151 Idaho at 561, 261 P.3d at 838 (explaining that, when engaging in statutory interpretation, the "statute is viewed as a whole" (quoting *BHC Intermountain Hosp.*, 150 Idaho at 95, 244 P.3d at 239)). Section 20-237B specifically distinguishes governmental entities—like the "state board of correction" and "the department of correction"—from a "provider of a medical service." By distinguishing among these entities, the statute is clear in that it prohibits the "state board of correction" from paying more than the Idaho Medicaid reimbursement rate to a "provider of a medical service" whose services are "billed directly to the department of correction." I.C. § 20-237B(1)-(2). The ordinary meaning of "directly" is "without anything intervening." *Black's Law Dictionary* 460 (6th ed. 1990). Here, however, PMC's services are not billed directly to IDOC. To the contrary, the certification order provides that "PMC was to submit all claims directly to Corizon and not seek payment from IDOC." Nor does the state board of correction pay PMC for its services, but rather, the certification order provides that PMC seeks payment from Corizon. As stated in the certification order, Corizon is a "private provider of prison healthcare services[.]" While Corizon and IDOC, as *amicus curiae*, contend the fact that PMC's services are billed directly to Corizon is insignificant since Corizon just pays PMC on IDOC's behalf, we decline to render the plain and unambiguous statutory requirements superfluous. *See, e.g.*, *Taylor*, 151 Idaho at 561, 261 P.3d at 838 ("[E]ffect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant." (quoting *BHC Intermountain Hosp.*, 150 Idaho at 95, 244 P.3d at 239)).

Where, as here, the statutory language is plain and unambiguous, we must give effect to the Legislature's deliberate drafting decisions. For instance, in *Safe Air for Everyone v. Idaho State Department of Agriculture*, 145 Idaho 164, 165, 177 P.3d 378, 379 (2008), this Court addressed whether the Idaho State Department of Agriculture (ISDA) violated the Idaho Open Meetings Act (IOMA) when some ISDA employees held a private meeting with representatives of various agencies and Indian tribes. The IOMA statute at issue stated "all meetings of a governing body of a public agency shall be open to the public." *Id.* (quoting I.C. § 67-2342(1) (2008)). The issue, then, was whether the ISDA employees constituted a "governing body of a public agency." *Id.* This Court held that they did not, observing that "it is clear that the

legislature distinguished between the 'governing body' and the 'employees' of an entity." *Id.* at 167, 177 P.3d at 381. Under IOMA, "the governing body is defined as *members* of a public agency, not *employees* of a public agency." *Id.* (citing I.C. § 67-2341(5) (2008)). And unlike employees, a "governing body" under IOMA was required to have "the authority to make decisions for or recommendations to a public agency regarding any matter." *Id.* at 168, 177 P.3d at 382 (quoting I.C. § 67-2341(5) (2008)). The ISDA employees lacked that authority, as any "decision they make can be countermanded by a supervisor, and their supervisor can likewise deny them permission to make recommendations." *Id.* Thus, the Legislature's deliberate drafting decision—requiring a "governing body" as opposed to mere employees—was dispositive. *Id.*; *accord Yzaguirre*, 144 Idaho at 477–78, 163 P.3d at 1189–90 (2007) (concluding audio recording of county commissioners' meeting did not satisfy IOMA's requirement for written minutes since the Legislature had "clearly expressed its intent to require written minutes" by expressly stating IOMA required "written minutes").

Corizon's principal counter-argument is that it can "step into the shoes of [IDOC] under the law of agency." In support, Corizon cites to Idaho Code section 20-241A(1)(a) and asserts section 20-241A(1)(a) shows that IDOC "has the power to hire private contractors to provide for the care and subsistence of its prisoners" and "[s]uch a contractor acts solely as an agent of the State[.]" We reject Corizon's assertion. As Corizon conceded at oral argument, section 20-241A(1)(a) is irrelevant here.[6] It is titled "[a]greements for confinement of inmates." I.C. § 20-241A(1)(a). It covers private entities "receiving physical custody for the purpose of incarceration" and provides that those entities "shall be considered as acting solely as an agent of this state." *Id.* Section 20-241A(1)(a) therefore does not address privatized entities who provide medical care to prisoners but do not house or retain physical custody over prisoners. In fact, Corizon's reliance on section 20-241A(1)(a) bolsters our conclusions above. Unlike section 20-241A(1)(a), section 20-237B contains no language addressing an agency relationship. This Court

---

[6] Similarly, in its brief as *amicus curiae*, IDOC erroneously cites to Idaho Code sections 67-9202 and 67-9205. But these two code sections are irrelevant. Title 67, Chapter 92 of the Idaho Code is entitled the "State Procurement Act" and does not address the provision of medical care services to prisoners. Section 67-9202 does not assist IDOC. It declares as public policies of Idaho to (1) "engage in open, competitive acquisitions of property"; and (2) "maximize the value received by the state with attendant benefits to the citizens." I.C. § 67-9202. Neither does section 67-9205 assist IDOC. Section 67-9205 enumerates a litany of powers and duties of the "administrator." The "administrator" is defined as "the administrator of the division of purchasing as created by section 67-9204, Idaho Code." *Id.* § 67-9203(2). In turn, section 67-9204 creates "within the department of administration the division of purchasing." This matter does not involve the department of administration or the division of purchasing.

will not graft that language into section 20-237B. *See, e.g.*, *Wright v. Ada Cnty.*, 160 Idaho 491, 498, 376 P.3d 58, 65 (2016); *Saint Alphonsus Reg'l Med. Ctr. v. Gooding Cnty.*, 159 Idaho 84, 89, 356 P.3d 377, 382 (2015); *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 896, 265 P.3d 502, 509 (2011).

Given the plain, unambiguous terms of section 20-237B, we answer the question certified in the negative. We therefore need not reach the arguments concerning agency deference to IDOC's construction, if any, of section 20-237B in Corizon's favor, as it is settled that "[a]n agency construction will not be followed if it contradicts the clear expression of the legislature." *Hamilton ex rel. Hamilton v. Reeder Flying Serv.*, 135 Idaho 568, 572, 21 P.3d 890, 894 (2001) (citing *Rim View Trout Co. v. Higginson*, 121 Idaho 819, 824, 828 P.2d 848, 853 (1992)).

## IV. CONCLUSION

Question certified is answered in the negative.

Justices JONES, HORTON, BRODY and BEVAN, **CONCUR.**